## SAMUEL SWETT *versus* The City of BOSTON.

A testator gave to his daughter, a feme covert, "the interest of 50,000 dollars, from the time of his decease, during her natural life, at her decease the principal to be equally divided among her children;" and his executors, being residuary devisees and legatees, gave bond to the judge of probate for the payments of all the debts and legacies. It was *held*, that the testator did not intend to place the sum above mentioned in trust for his daughter, and secure to her the income thereof, but that he intended to give her a definite annual sum, equal to the lawful interest on 50,000 dollars, to be paid by his executors out of his estate.

The statute of February 28th, 1831, § 2, provides "that persons entitled to the income of any personal property held by others in trust for themselves, or for the particular and special use of their wives, shall be taxed for the capital or principal sum." It was *held*, that under the foregoing bequest there was no "capital or principal sum" owned legally or equitably by, or held in trust or otherwise for the testator's daughter, and that consequently she was not liable to taxation under this clause of the statute.

An investment of 50,000 dollars, made by the executors, without the consent of the daughter, in trust to pay her the income, was *held* to have no effect upon her rights in regard to taxation under the above provision of the statute.

THE parties agreed upon the following facts.

The last will and testament of William Gray, duly proved in October, 1825, contains these provisions : —

" 1st. I appoint my five sons, (naming them,) or the survivors of them, my executors."

" 3d. I also give to my said daughter, (Lucia, the plaintiff's

wife,) the interest of fifty thousand dollars, from the time of my decease, during her natural life, and at her decease the principal to be equally divided among her children, (naming them,) or the survivors of them at her decease."

"4th. If at the time of my decease any one of my sons should be so situated as that, in the opinion of my said executors, I should have desired to make further provision for him or his family, I will that my executors aforenamed cause a sum, not exceeding fifty thousand dollars, to be invested in such funds as they think proper, the income to be appropriated to the use of such son during his life, and at his decease to be equally divided among his children."

" 5th. I give the whole residue of my estate, real, personal and mixed, to my five sons, in equal portions."

The executors gave bond to the judge of probate to pay the debts and legacies ; and they have not returned any inventory nor rendered any account to the Probate Court.

The plaintiff received of the clerk or agent of the executors, the annual payments of six per cent on $ 50,000 for the years 1826 and 1827, under the name of interest on the legacy in the will.

In December 1827, the executors, of their own accord and without any agreement with the plaintiff or his wife, deposited in the office of the Massachusetts Hospital Life Insurance Company the sum of $ 50,000, on a policy or contract made with the company. By this contract it was provided, that the company should annually, during the life of Lucia Swett, cause to be paid to her the same rate of interest on the sum deposited, as the company should receive upon their capital stock and the other property in their possession, after deducting necessary expenses and charges ; that in case she should be living at the expiration of five years from the date of the instrument, the executors and the company, respectively, should have the right to withdraw or pay off the principal sum so deposited, giving sixty days previous notice of their intention so to do ; that this right of withdrawing or paying off the deposit should be renewed at intervals of five years so long as the trust should so continue ; and that the company should, in sixty days after her decease assign and pay the amount of the principal sum and

all interest due thereon, to the executors, in trust, to be distributed according to the will. Under an assurance from the executors to the plaintiff, that on his receiving the annual payments on this contract, they would pay him as much in addition thereto as would make the annual payments under the will amount to six per cent on $ 50,000, but without binding themselves to do so longer than they pleased, the plaintiff has received such payments from the company and such balances from the executors, up to January, 1835.

In May, 1835, the plaintiff was assessed by the city of Boston, in the following words : — " On personal estate held in trust by William Gray's executors for the use of Mrs. Swett, $ 211·50." The amount of this tax is the same as it would have been, had the plaintiff been the owner of the same sum of $ 50,000.

A warrant was issued against the plaintiff, and in pursuance thereof he was compelled to pay the tax, and this action was brought to recover back the amount.

If the Court should be of opinion, that the plaintiff could recover the money so paid by him, in any form ¬of action against the city of Boston, the defendants were to be defaulted and judgment rendered for the amount paid, with interest and costs ; otherwise a nonsuit was to be entered.

The statute of February 28th, 1831, § 2, under which the assessment upon the plaintiff was made, provides " that persons entitled to the income of any personal property held by others in trust for themselves, or for the particular and special use of their wives, shall be taxed for the capital or principal sum in the town where such persons reside."

The case was argued in writing.

*Swett, pro se.* The intent and operation of the will, are, not to create any trust fund for the plaintiff's wife, but to give her an annual sum of $ 3,000, that is, a sum equal to the interest on $ 50,000, at the rate of six per cent. The executors, therefore, were not authorized to establish any trust fund for her use. Neither have they done so ; on the contrary, by giving bond to the Probate Court for the payment of debts and legacies, they have made themselves personally responsible for the annual payment of the sum of $ 3,000. The investment in

the Life Insurance office was made after they had given such bond, and was, therefore, not of the assets of the testator, but of the personal property of the executors ; and if the company should become insolvent, the loss would fall upon the executors and not upon the legatee.   It was made too without the assent of the legatee, and instead of $ 3,000 it yields annually less than $ 2,500 ; and to allow the executors to replace the legatees security on their bond, by this security of far inferior value, would be unjust and illegal.   But supposing that a trust fund exists in the hands of the executors, or of the Life Insurance Company, the tax is not in conformity to the statute. The construction of the statute by the assessors, would make it unjust and unconstitutional.   They have taxed the plaintiff as if he were the owner of the fund and for its full value ; whereas his interest is only a life estate, during the life of another person, in the income of the fund.   The value to him is simply of an annual income, and ought to be taxed as other incomes, or it ought to be subject to a deduction, as all money at interest is, of all money for which the party taxed pays interest ; otherwise a poor man may pay the tax of a rich one, and the tax be disproportional ; which the constitution prohibits. The income which the plaintiff receives is $ 3,000 ; the fund which raises this sum is necessarily uncertain, and the tax on any specific sum as capital, is therefore void for uncertainty. It does not follow, that because the tax on the executors for the fund in the Life Insurance office has been held to be illegal, ( *Gray* v. *Boston*, 15 Pick. 376,) the plaintiff is to be taxed for that fund.

*J. Pickering*, City Solicitor, for the defendants.   It having been decided in *Gray* v. *Boston*, that the executors were not liable to be taxed for the property now in question, it is obvious that this whole fund of $ 50,000 will not be taxed, unless it can be assessed in some form to the plaintiff.   It could never have been the intention of the legislature that property so situated should escape taxation.   The statute does not use the term " trust " in the technical signification, but in a more enlarged and popular sense ; to comprehend all descriptions of " personal property " held by one person for the benefit of another.   But if it should be taken in a more restricted sense,

the provision in the will might be deemed to create a trust, within the rules recognised by this Court, the executors being the trustees. *Saunderson* v. *Stearns*, 6 Mass. R. 37 ; *Farwell* v. *Jacobs*, 4 Mass. R. 634 ; *Smithwick* v. *Jordan*, 15 Mass. R. 113. Or if necessary, in order to avoid any embarrassment from the doctrine of trust estates, the clause of the statute may be read thus : — " the income of any personal property held by others, in trust for themselves, or [held] for the particular and special use of their wives," &c. without designating it as being held in trust or otherwise. The plaintiff objects, that admitting a trust fund to exist, the tax is not conformable to the statute. The language of the statute is explicit and unambiguous, and the question is simply, whether the fund in question is held by other persons, either the executors or the Life Insurance Company, " for the particular and special use " of the plaintiff's wife. If it is so held, then the plaintiff, being the " person entitled," is liable to be taxed for it ; and according to the express language of the act, he is to be taxed " for the capital or principal sum," and in the town where he " re sides." The tax has accordingly been assessed for the property in question to the plaintiff, who is admitted to be a resident in Boston. But the plaintiff further insists, that the tax is not conformable to the statute, because it is assessed upon him for the capital, and not for the interest or income, and is unconstitutional. The defendants answer, that the assessment is made literally according to the words of the statute, which do not provide for taxing the income of such funds ; and as to the constitutionality of this mode, the only question is, whether this portion of the property of the Commonwealth, in whose hands soever it may be, pays more than its equal share of the public burdens. The legislature have a perfect right to decide in whose hands it will be the most expedient to tax it. And as to the supposed hardship, which is urged by the plaintiff, he would have an adequate remedy by applying for an abatement, if it should be just and reasonable.

MORTON J. delivered the opinion of the Court. In the city tax for 1835, the plaintiff was assessed in the following form, " *on personal estate held in trust by William Gray's executors for the use of Mrs. Swett*, $211·50." This tax the

plaintiff was compelled to pay ; and if it was invalid, he is en titled to recover back the amount with interest. There appears to be no inequality in the form of the assessment, and the only question for our determination, is the liability of the plaintiff to be assessed for the " principal sum " mentioned.

The assessment is founded on the last tax act, *St.* 1831, § 2, which provides, " that persons entitled to the income of any personal property held by others in trust for themselves, or for the particular and special use of their wives, shall be taxed for the capital or principal sum in the town where such persons reside." To bring the plaintiff within this provision, it must be made to appear that some " *capital* " was held in trust for him, the income of which belonged to himself or his wife.

The rules of construction to be applied to acts of this description were laid down and explained in the case of *Gray* v. *City of Boston,* 15 Pick. 376.

The late William Gray, by his last will, gave to his daughter Lucia, (the plaintiff's wife,) among other things, " the interest of fifty thousand dollars, from the time of my decease, during her natural life, and at her decease the principal to be equally divided among her children." What is the true construction of this clause ? Did the testator intend to create a trust fund, the income of which belonged to the plaintiff and his wife, and the principal of which vested in their children, to be paid to them on the death of their mother ? If so, then, should the fund be lost by misfortune and without the fault of the trustee, the one would lose the income and the other the capital.

We think the meaning of the testator is very clear, and that no intention to place this sum in trust for his daughter and her children is evinced in the will. If he had intended to create a trust fund, he would have used language clearly expressive of that intention, and not left it to doubtful construction and inference. This he did in the next clause, in a contingent provision for either of his sons who might become unfortunate after his death. We are of opinion, that in providing for this daughter the testator intended to give her a legacy, consisting of an annual sum during her life, and to give to her children a

legacy of fifty thousand dollars, payable on the death of their mother, and that these bequests were absolute and not depending on any contingency, and were to be paid by his executors out of his estate. If the testator had directed his executors to pay to Mrs. Swett three thousand dollars, or any other specific sum, annually, and fifty thousand dollars to her children at her decease, there could have been no question as to the construction of the bequest. It would be perfectly clear that no trust was intended, and that neither the amount of the legacy, nor its certainty, would depend on the investment or the existence of any particular fund. We think this case is exactly similar, or rather the same thing. The interest of a particular sum is named as the measure of the annuity, and the bequest is as specific as if an exact sum had been specified, and the legacy no more depends upon the actual income of a particular fund, than if no definite sum had been named. What the precise amount of the annuity may be, whether it is fixed or liable to fluctuate, should the legal rate of interest be changed, are questions which we have no occasion now, and probably never shall have, to decide.

The statute requires that the tax be imposed upon the " capital or principal sum," and not upon any annual or other income. Now we think here was no " *capital or principal sum,*" owned legally or equitably, or held in trust, or otherwise, for the plaintiff or his wife. The testator imposed upon his executors, an obligation to pay to Mrs. Swett, out of his estate, an annuity, during her life, and to pay a definite sum to her children. The performance of this duty they have secured by their official bond to the judge of probate.

It is scarcely necessary to remark, that the investment of fifty thousand dollars in the Hospital Life Insurance Company, can have no influence upon the plaintiff's liability to taxation. It was an act of the executors, not done in pursuance of any direction of the will, nor assented to by the plaintiff, and can have no effect upon the rights of himself, his wife or his children.

It has been strenuously contended by the defendant's counsel, that unless the plaintiff is liable for this tax, here will be a large amount of property not subject to taxation. And as it is

the intention of the legislature to tax *all property*, we have been urged to give this tax act such a construction as will include this particular fund.   There is no doubt that the intention of the legislature is to tax *all property*, not exempted, *equitably ;* and that the tax act and other statutes regulating the assessment of taxes, are made with this object in view. And when a description of property is in danger of escaping taxation, these circumstances ought to have weight in giving a construction to the law.   But they do not authorize us to give a forced and unnatural meaning to the language of the statute. With the greatest vigilance which can be exercised, some *property will find crevices in the law through which it will* escape the grasp of the tax maker and the tax collector.   But when discovered, it is the province of the legislature, and not the court, to stop them.

This argument is founded upon the assumption, that here is a distinct sum set apart for a specific purpose and which can be taxed to no person except the plaintiff.   But we think the assumption is not supported ; and that this fund is as much liable to taxation as any other property in the hands of the executors.   They are liable to be taxed for all the real and personal estate which they hold ; and all money which they have at interest more than they pay interest for.   They owe to the children of Mrs. Swett fifty thousand dollars, payable at her death.   An amount equal to the interest on the same sums they are bound to pay to her during her life.   If they have money at interest, this sum should be deducted from the amount, and a tax assessed upon the balance. But if they have invested their money in stocks or other property liable to taxation, then, like other men in debt, they may be taxed for property not *clearly* their own.   In either view, this fund will not escape taxation.

The plaintiff is not taxed for this annuity as " income." And manifestly it cannot, according to the statute, be brought into the assessment under that denomination.   The statute limits the income which is taxed, to such as is derived " from any profession, handicrafts, trade or employment, organized by trading at sea or on land."   If the legislature deem an annuity like this, a proper subject of taxation, they will so amend the

law as to embrace it. But by the present statute, it is not liable to be taxed to the plaintiff in any form.

*The defendants defaulted, and judgment for the amount of the tax, with interest.*